```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
TATUM MINERVA,                                                 :
                                                               :
                                       Plaintiff,              :
                                                               :                MEMORANDUM & ORDER
                      -against-                                :
                                                               :                2:19-cv-05216 (ENV) (ARL)
EMBLEMHEALTH, JENNIFER TRUSCOTT, and                           :
BARI PULCINI,                                                  :
                                                               :
                                       Defendants.             x
-------------------------------------------------------------
```

VITALIANO, D.J.

On September 12, 2019, plaintiff Tatum Minerva commenced this action against defendants EmblemHealth and two EmblemHealth employees, Jennifer Truscott and Bari Pulcini, alleging that she was wrongfully fired by defendants on the basis of both her race and perceived disability. *See* Compl., Dkt. 1. In the operative complaint, Minerva brought ten causes of action based on four theories: (1) racial discrimination/harassment under 42 U.S.C. § 2000e *et seq.* ("Title VII"), 42 U.S.C. § 1981 ("§ 1981"), and the New York State Human Rights Law ("NYSHRL"); (2) "perceived disability" discrimination under the Americans with Disabilities Act ("ADA") and NYSHRL; (3) retaliation under Title VII, § 1981, ADA, and NYSHRL; and (4) "aiding and abetting" discrimination claims against Truscott and Pulcini under NYSHRL. Pl.'s Rule 56.1 Stmt., Dkt. 35, ¶ 25; Compl. ¶¶ 34–96.

Defendants moved for summary judgment on November 3, 2021. *See* Defs.' Mot., Dkt. 33. On February 11, 2025, Magistrate Judge Arlene R. Lindsay issued a Report and Recommendation ("R&R") recommending that defendants' motion for summary judgment be granted in full. *See* R&R, Dkt. 38, at 1. Minerva filed objections to the R&R on February 25, 2025. *See* Pl.'s Objs., Dkt. 39. For the following reasons, the R&R is adopted without

1

modification as the opinion of the Court, and summary judgment is granted in favor of defendants on all claims.

Background[1]

EmblemHealth is a health insurance company with its principal place of business in New York City.  Pl.'s Rule 56.1 Stmt. ¶ 2.  Minerva worked in EmblemHealth's office in Melville, Long Island as an administrative assistant, from October 30, 2017, until June 5, 2018.  *Id.* ¶ 8.  Minerva is an African American woman.  *Id.* ¶ 1.

Defendant Truscott was the Senior Vice President of Operations at EmblemHealth from approximately 2017 until July 2020, when she became Chief of Operations.  *Id.* ¶ 6.  As an administrative assistant, Minerva reported to Truscott and also provided administrative support to four other individuals on Truscott's Operations Executive Team.  *Id.* ¶ 11.  Defendant Pulcini is the HR Business Partner at EmblemHealth.  *Id.* ¶ 7.  She works in the Melville office, where she is responsible for HR-related issues involving the Melville-based employees.  *Id.*

Minerva alleges that she was wrongfully terminated by EmblemHealth on the basis of her race and perceived disability.  *Id.* ¶ 10.  Minerva contends that two alleged events support an inference of racial discrimination: (1) a holiday party she attended at Truscott's home at which one of Truscott's guests referred to African Americans as "colored," *id.*; and (2) an event prior to her employment at EmblemHealth in which a noose was left on the desk of an African American female employee, *id.* ¶ 21.  Minerva claims that after this party, defendants began tracking her

---

[1] The facts are drawn from the parties' affidavits, exhibits, Rule 56.1 statements and counterstatements of fact and are undisputed unless otherwise noted.  Where facts are disputed, "the sources for the claims made in dueling Rule 56.1 Statements" are considered directly. *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 138 F. Supp. 3d 352, 396 (S.D.N.Y. 2015).  All citations to page numbers refer to the Electronic Case Filing System ("ECF") pagination, except that citations to a deposition reference the internal document's pagination.

attendance as a pretext to ultimately fire her on the basis of race. *Id.* ¶ 18. Minerva also claims that Truscott asked if she felt "uncomfortable" at the party, although Truscott denies making this statement. *Id.* ¶ 21; Schmidt Decl. Ex. D, Dkt. 32-4, at 38–39 ("Truscott Dep."). Other than this statement, Minerva does not claim that Truscott or any other EmblemHealth employees made negative or derogatory comments about her race. *See* Pl.'s Rule 56 Stmt. ¶ 21.

As for disability discrimination, Minerva claims that she was fired as the result of a possible diagnosis of cervical cancer, which was disclosed to Truscott on April 12, 2018. *Id.* ¶¶ 17, 22. Minerva claims that Truscott did not receive this disclosure well, and that Defendant Pulcini spoke to her with disdain after learning of her medical condition, expressing concern that Minerva's diagnosis could result in a "trend" of her needing to be out of the office. *Id.* ¶ 22. According to Minerva, defendants then fired her on the basis of a perception that she would need to miss work for medical appointments. *Id.*

For its part, EmblemHealth claims that during the period from late 2017 through early 2018, Minerva was becoming unreliable by coming into work late, leaving work early, frequently changing appointments, not being reachable on certain days, and otherwise not providing sufficient notice for PTO days. *See* Defs.' Rule 56.1 Stmt., Dkt. 31, ¶ 14. Although Minerva disputes this, she concedes that she took PTO at times for reasons other than medical issues, and that she faced challenges in the position due to her increased responsibilities and expanding role. Pl.'s Rule 56.1 Stmt. ¶¶ 14–16. Truscott testified that she had become concerned with Minerva's job performance in late 2017 due to her failure to provide notice before taking time off and difficulty reaching her during business hours. Truscott Dep. at 40–41. Significantly, it is undisputed in the record that EmblemHealth's concerns about Minerva's performance preceded their knowledge of her possible cancer diagnosis, as EmblemHealth

3

personnel had begun tracking Minerva's time and attendance prior to April 2018 when that diagnosis was revealed.  *Id.* at 41; Pl.'s Rule 56.1 Stmt. ¶¶ 17–18.

Legal Standards

A.  *Report and Recommendation*

When reviewing a magistrate judge's report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).  "The district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3).  However, if a party "fails to properly object to the R&R, the district judge reviews the R&R only for clear error." *Nambiar v. Cent. Orthopedic Grp., LLP*, 2025 WL 3007285, at *3 (2d Cir. Oct. 28, 2025).  Clear error exists "where, upon a review of the entire record, [the district judge] is left with the definite and firm conviction that a mistake has been committed." *Saveria JFK, Inc. v. Flughafen Wien, AG*, 2017 WL 1194656, at *2 (E.D.N.Y. Mar. 30, 2017).

The Second Circuit has recently clarified what it means to "'properly object' to an R&R." *Nambiar*, 2025 WL 3007285, at *3.  First, "[a] proper objection must be timely." *Id.*  Under Fed. R. Civ. P. 72, an objection must be filed within fourteen days of service of a copy of the R&R. *See* Fed. R. Civ. P. 72(b)(2).  Under Second Circuit law, "[f]ailure to timely object may 'operate[] as a [forfeiture] of further judicial review' of the magistrate judge's decisions." *Nambiar*, 2025 WL 3007285, at *3 (alterations in original) (citation omitted).  Not only must a proper objection be timely, it must be specific, meaning the objection must be articulated "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *Id.* (citation omitted).  Thus a litigant "objecting to an R&R may not simply rest on the briefs considered by the magistrate judge; she must lodge a specific objection to some specific aspect of the R&R." *Id.*

4

at *5.  Finally, a "proper objection generally may not raise new arguments not previously made before the magistrate judge." *Id.* at *3.  To that end, new "case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance" are generally not permitted in a proper objection.  *Gov't Emps. Ins. Co. v. Galperin*, 2025 WL 909190, at *1 (E.D.N.Y. Mar. 26, 2025).

Importantly, the Second Circuit has held that when a timely objection "raises and properly briefs arguments previously rejected by the magistrate judge, the district judge must review those arguments *de novo*." *Nambiar*, 2025 WL 3007285, at *5.  This represents a departure from "an approach that has gone unchecked for some years" in this circuit.  *Id.*  In *Nambiar*, the Second Circuit noted that in reviewing an R&R, the district court below—as had other district courts in recent years—essentially "applied an additional qualification to the definition of a 'proper objection,' requiring that an objection may not reiterate to the district judge arguments already raised before the magistrate judge." *Nambiar*, 2025 WL 3007285, at *3–*4.  That preexisting approach, the Second Circuit reasoned, was "untenable" and "place[d] a litigant in an impossible position," because a litigant could not raise an argument for the first time in objections to an R&R but also could not raise an argument already presented.  *Id.* at *4.  Moreover, such an approach would impermissibly expand the magistrate judge's role beyond its proper Article III limits because "*de novo* review of those portions of the magistrate judge's report and findings to which a party timely objects is crucial to the constitutionality of the Federal Magistrate Act."  *Id.* (quotation marks and citation omitted).

Therefore, "[w]here a litigant's objections take issue with a specific legal conclusion in the report and recommendation, they should be considered *de novo*, even if they repeat an argument raised before the magistrate judge." *Id.* (quotation marks and citation omitted).  But "the remaining

5

portions of the report as to which no objections were made are reviewed for clear error." *Id.* (citation omitted).

      B.    *Summary Judgment*

Under Federal Rule of Civil Procedure 56, summary judgment shall be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). "[A] fact is material if it 'might affect the outcome of the suit under the governing law.'" *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene of the City of N.Y.*, 746 F.3d 538, 544 (2d Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986)). A dispute over material facts is "genuine" where "a reasonable jury could return a verdict for the nonmoving party" based on the evidence cited. *Anderson*, 477 U.S. at 248.

Assertions of fact made in connection with a motion for summary judgment must be supported by citations "to particular parts of materials in the record" that could be presented as admissible in evidence, which may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A); *see also Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 57 (2d Cir. 2012).

"Before summary judgment may be entered, the district court must ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed." *Jackson v. Fed. Express*, 766 F.3d 189, 194 (2d Cir. 2014). With that standard in mind, the Court's job at this stage is not to try the facts but instead to merely "determine whether there *are* issues of fact to be tried." *Sutera v.*

6

*Schering Corp.*, 73 F.3d 13, 16 (2d Cir. 1995) (quoting *Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 244 (2d Cir. 1984)).  The movant carries the burden of demonstrating that there is no genuine dispute as to any material fact, *see Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005), and the Court will resolve all ambiguities and draw all permissible factual inferences in the light most favorable to the party opposing the motion, *see Reese v. Triborough Bridge & Tunnel Auth.*, 91 F.4th 582, 589 (2d Cir. 2024).  "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." *Hetchkop v. Woodlawn at Grassmere, Inc.*, 116 F.3d 28, 33 (2d Cir. 1997).

In granting "summary judgment in a discrimination action," an "extra measure of caution" is merited, because "direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions." *Rodriguez v. Long Island Am. Water, Inc.*, 2014 WL 4805021, at *4 (E.D.N.Y. Sept. 26, 2014) (quoting *Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 603 (2d Cir. 2006)).  Still, it is "beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001).  Therefore, "even in the discrimination context, a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997).

Discussion

    A.    *Racial Discrimination*

Finding that Minerva's objections to Magistrate Judge Lindsay's findings and recommendations with regard to her racial discrimination claims are specific, proper, and timely,

the R&R is reviewed on those claims *de novo*. Current law is well settled on how such a review should be conducted. Minerva's racial discrimination claims under Title VII, § 1981 and NYSHRL are all governed by the analytical framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–06, 93 S. Ct. 1817, 1824–26, 36 L. Ed. 2d 668 (1973). *See Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 209–10 (E.D.N.Y. 2014). Under this framework, the plaintiff bears the initial burden of establishing a *prima facie* case of intentional discrimination by a preponderance of the evidence. *See Collins v. New York City Transit Auth.*, 305 F.3d 113, 118 (2d Cir. 2002); *see also Dowrich-Weeks v. Cooper Square Realty, Inc.*, 535 Fed. App'x 9, 11 (2d Cir. 2013). To state a *prima facie* claim for employment discrimination, a plaintiff must show (1) that she is a member of a protected class; (2) that she was qualified for the position in question; (3) that defendants took an adverse employment action against her; and (4) that the circumstances support an inference of discrimination on the basis of her membership in that protected class. *See Gad-Tadros v. Bessemer Venture Partners*, 326 F. Supp. 2d 417, 423 (E.D.N.Y. 2004) (citing *McDonnell Douglas*, 411 U.S. at 802). If a plaintiff makes a *prima facie* case, the defendant then has the burden of producing "through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Chuang v. T.W. Wang Inc.*, 647 F. Supp. 2d 221, 226 (E.D.N.Y. 2009) (citation omitted). If the defendant carries this burden, the burden shifts back to the plaintiff to put forth "adequate evidence to support a rational finding that the reason proffered by the defendant is a pretext for discrimination or retaliation." *Id.*; *see also McDonnell Douglas*, 411 U.S. at 804–05.

Minerva fails to state a *prima facie* case for employment discrimination because the circumstances do not support an inference that she was fired on the basis of race, and a rational

8

juror therefore could not conclude that her termination was motivated by racial animus. Summary judgment against the plaintiff is proper under the *McDonnell Douglas* test when the plaintiff fails to fulfill its fourth factor by showing the adverse action occurred under circumstances giving rise to the inference of discrimination. *See Worrell v. New York City Dep't of Educ.*, 140 F. Supp. 3d 231, 240 (E.D.N.Y. 2015) (collecting cases).

Neither of the events that Minerva argues raise an inference of racial discrimination—the reference by Truscott's guest at the holiday party to "colored people," and the noose left on the desk—do so. Pl.'s Rule 56.1 Stmt. ¶¶ 10, 21. As for the remark at the holiday party, courts in this circuit evaluate whether a remark is probative of discrimination under a four-factor test: "(1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process." *Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010).

Although a reference to African American people as "colored" could certainly be viewed as discriminatory by a rational juror under the *Henry* test's third factor, the remark does not otherwise imply that Minerva was fired because of racial animus: it was not made by an EmblemHealth employee, was made months before the decision to fire her, and was made at an off-site holiday party which was not itself sponsored by EmblemHealth. *See* Pl.'s Rule 56.1 Stmt. ¶ 10; Truscott Dep. at 35–36. Certainly Minerva is correct that the remark is inappropriate, but she fails to fully engage with the four-factor *Henry* test to explain why the making of the comment tends to show that EmblemHealth subsequently fired her because she was African American. Moreover, Minerva concedes that other than asking if she was "uncomfortable" at the

9

party—which Truscott denies—Truscott never herself made any remarks, derogatory or otherwise, about Minerva's race, and nor did any other EmblemHealth employee.  *See* Pl.'s Rule 56.1 Stmt. ¶ 21; Brown Decl. Ex. 2, Dkt. 34, at 22–23 ("Pl.'s Dep."); Truscott Dep. at 38–39.[2]

The alleged noose incident moves no further toward a *prima facie* case—while highly inappropriate and troubling, it cannot serve as evidence of intent on EmblemHealth's part to fire Minerva because she was not yet an EmblemHealth employee at the time this incident took place.  *See* Pl.'s Rule 56.1 Stmt. ¶ 21; *see also Wesley-Dickson v. Warwick Valley Cent. Sch. Dist.*, 586 F. App'x 739, 743–44 (2d Cir. 2014).  Bluntly, the noose incident in no way advances Minerva's contention that EmblemHealth acted with racial animus when it terminated her employment, nor does she put forth any other evidence that would support a reasonable inference that her termination resulted from racially discriminatory reasons.

Minerva additionally argues that because defendants tracked her attendance without formally raising concerns or disciplining her for attendance issues, or "simply disapprov[ing] the time off," the Court should infer that her attendance was tracked as a pretext to fire her based on animus, given that Minerva had "never taken any time off that had not been approved and never taken more time off than allotted to her."  Pl.'s Objs. at 8–9.  But federal antidiscrimination law does not require EmblemHealth to respond to concerns about Minerva's attendance or reliability

---

[2] Minerva objects that Magistrate Judge Lindsay improperly accepted that "less than two months after Minerva began working, [Defendant Truscott] started to become concerned with Minerva's reliability," when in fact the offensive remarks at Truscott's holiday party predated Truscott's concerns around her performance.  Pl.'s Objs. at 4.  According to Minerva, this timeline implies that Truscott's scrutiny of her attendance was "pretextual and rooted in discriminatory animus rather than legitimate performance concerns."  *Id.* at 6.  But the holiday party in question fails to support Minerva's discrimination claim regardless of whether Minerva's supervisors had already become concerned about her performance by that time; because the remarks in question were not made by an EmblemHealth employee and did not take place at an official EmblemHealth function, they do not give rise to an inference of discriminatory intent.

through the specific methods she suggests as opposed to the ones they employed; it simply requires them to make such decisions without an "invidious discriminatory purpose." *Howley v. Town of Stratford*, 217 F.3d 141, 151 (2d Cir. 2000) (quoting *Washington v. Davis*, 426 U.S. 229, 242, 96 S. Ct. 2040, 2048, 48 L. Ed. 2d 597 (1976)). The Court's role is "not to act as a 'super personnel department' that second guesses employers' business judgments." *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001) (citation omitted), *superseded in part on other grounds by* Fed. R. Civ. P. 37(e). Therefore, defendants' choice to track Minerva's attendance and ultimately fire her, rather than raise concerns about her attendance beforehand, does not give rise to an inference of discriminatory intent.

In short, Minerva has failed to make out a *prima facie* case that she was fired on account of racial discrimination, and even if she did, EmblemHealth has advanced equal reasons for her termination, there also being no genuine dispute that those reasons were non-pretextual. Accordingly, as Magistrate Judge Lindsay also concluded, summary judgment is granted in favor of defendants on her racial discrimination claims under Title VII, § 1981, and NYSHRL.

B. *Disability Discrimination*

Minerva's objections to the R&R on her disability discrimination claims are specific, timely, and proper, and so the R&R is reviewed *de novo* on these claims. *See Nambiar*, 2025 WL 3007285, at *5. Like her racial discrimination claims, Minerva's disability discrimination claims under ADA and NYSHRL are assessed under the *McDonnell Douglas* framework. *See Baron v. Advanced Asset & Prop. Mgmt. Sols., LLC*, 15 F. Supp. 3d 274, 280–81 (E.D.N.Y. 2014). At step one, to establish a *prima facie* case of discrimination on the basis of a disability, a plaintiff must show: "(1) her employer is subject to the ADA; (2) she was disabled [or regarded as disabled] within the meaning of the ADA; (3) she was otherwise qualified to perform the

11

essential functions of the job, with or without reasonable accommodation; and (4) she was fired or suffered an adverse employment action because of her disability." *Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 605 (E.D.N.Y. 2013). Under ADA, the term "disability" means "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). NYSHRL, however, has a broader definition of "disability" than ADA: "it does not require any showing that the disability substantially limits a major life activity," but simply requires plaintiff to prove that she has a "medically diagnosable impairment." *Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 457 n.6 (S.D.N.Y. 2023) (citation omitted). The causation standard for disability discrimination claims is also different than racial discrimination claims under Title VII; the Second Circuit has held that "ADA requires a plaintiff alleging a claim of employment discrimination to prove that discrimination was the but-for cause of any adverse employment action." *Natofsky v. City of New York*, 921 F.3d 337, 348 (2d Cir. 2019).

  Reviewing the entire record independently, the Court is in accord with Judge Lindsay's conclusion that Minerva was neither disabled within the meaning of the applicable statutes nor perceived as such by her employers. For instance, Minerva argues that she was disabled within the meaning of ADA because her "nausea, which was related to the return of her cancer cells, directly impacted a major life activity" by preventing her from working. Pl.'s Objs. at 7. But Minerva has failed to cite to evidence showing that this nausea made her unable to perform the major life activities specified by ADA, such as "caring for oneself," "breathing," or "thinking." 42 U.S.C. § 12102(2); R&R at 17. Although Minerva's nausea may have made her job more difficult or necessitated the use of PTO, to show that it substantially limited her in working Minerva must prove that she is "significantly restricted in the ability to perform either a class of

12

jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." *McDonald v. City of New York*, 786 F. Supp. 2d 588, 609 (E.D.N.Y. 2011). Although Minerva testified that she "was sick during that time," that she "wasn't feeling good," and that she had nausea and "backaches," she has failed to show that these ailments, while regrettable, rose to the level of a disability under federal law, or that it constituted a medically diagnosable impairment under NYSHRL—especially given that, fortunately, her cervical cancer had not returned and she did not need any medical treatments while at EmblemHealth. Pl.'s Dep. at 98, 100, 135–37; Pl.'s Rule 56.1 Stmt. ¶ 19. These factual findings, moreover, are not materially disputed in the evidentiary record.

In a similar way, moreover, and again for the want of support in the record, the Court agrees with Judge Lindsay's rejection of Minerva's argument that she was viewed as having a disability under ADA because of Defendant Pulcini's "expressing concern that Ms. Minerva would have to take time off from work for medical treatment of the perceived impairment" and viewing her with "disdain." *See* Pl.'s Objs. at 7; R&R at 17. Even if Pulcini was concerned that Minerva's diagnosis could impact her work schedule, Minerva has failed to show that Pulcini or any other EmblemHealth personnel perceived her to be incapable of performing manual tasks, reading, concentrating, thinking, communicating, or otherwise working. Nor does Pulcini's asking Minerva if missing time for medical appointments would be a "trend" establish that Pulcini viewed Minerva as disabled within the meaning of the relevant statutes; given that Minerva had disclosed to Pulcini that she was at risk of a cancer diagnosis, for Pulcini to ask about the possibility that Minerva would require more medical appointments and miss more work in the future would only be natural. Pl.'s Rule 56.1 Stmt. ¶ 22. As a consequence, Minerva's objections to the R&R on this point are overruled and summary judgment is awarded

13

to defendants.

    C.    *Remaining Claims*

Although Minerva's objections regarding her retaliation claims raise arguments which were already made in the summary judgment briefing and rejected in the R&R, they do so in sufficiently specific fashion to require *de novo* review. See *Nambiar*, 2025 WL 3007285, at *5. In other words, Minerva has objected "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection," *id.* at *3—namely, because immediately after disclosing "her perceived medical disability, namely the return of her cervical cancer cells," she was "threatened with a final warning for purported conduct she had never received an initial warning or discussion about" and subsequently fired. Pl.'s Objs. at 9–10. Therefore, under *Nambiar*, Magistrate Judge Lindsay's recommendations as to Minerva's retaliation claim must be reviewed *de novo*.

Like discrimination claims, retaliation claims too are analyzed under the *McDonnell Douglas* framework, under which to establish a *prima facie* case of retaliation the plaintiff must show that (1) she was engaged in a protected activity, (2) her employer was aware of her participation in the protected activity, (3) the employer took adverse action against her, and (4) a causal connection existed between the protected activity and the adverse action. See *Kirkland-Hudson*, 665 F. Supp. at 459 (E.D.N.Y. 2023). Retaliation claims under Title VII, § 1981, NYSHRL, and ADA are all analyzed according to this test. *See id.*; *see also Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999).

Minerva's retaliation claim fails because she has not produced evidence showing that she engaged in a protected activity. "Protected activity is action taken to protest or oppose discrimination prohibited by the ADA." *Turner v. Delta Airlines, Inc.*, 658 F. Supp. 3d 123, 139

14

(E.D.N.Y. 2023) (quotation marks and citation omitted). "Activities protected by the ADA include complaints of ADA discrimination, including complaints on a good faith belief that the employer's actions violated the ADA, and requests for reasonable accommodations." *Flieger v. E. Suffolk BOCES*, 693 F. App'x 14, 18 (2d Cir. 2017). Minerva has admitted that she did not raise alleged discrimination concerns with anyone at EmblemHealth's human resources department at any time during her employment, except to the extent that she "emailed Defendant Pulcini to demand proof of the alleged time and attendance issues." Pl.'s Rule 56.1 Stmt. ¶ 23. Such a demand for proof does not rise to the level of a formal complaint or protest against discrimination. Nor did Minerva file any formal charge or participate in any investigation of EmblemHealth's practices, as, for instance, by filing charges with the Equal Employment Opportunity Commission. *See Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001). Therefore, the Court grants summary judgment on plaintiff's retaliation claims under Title VII, § 1981, ADA, and NYSHRL.

The theme does not vary with respect to the aiding and abetting claims Minerva brings under NYSHRL. Reviewed *de novo*, the aiding and abetting claim fails because it impermissibly misses the essential first step. A valid NYSHRL aiding and abetting claim cannot be stated without the plausible pleading of "a valid primary claim for discrimination or retaliation." *Rossbach v. Montefiore Med. Ctr.*, 2021 WL 930710, at *7 (S.D.N.Y. Mar. 11, 2021). Minerva has established no such underlying claim. Therefore, because Minerva has no "claim for . . . discrimination or a hostile work environment on the part of . . . defendant, there is no predicate for aiding and abetting liability with respect to these claims." *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 338 (S.D.N.Y. 2020).

Conclusion

In line with the foregoing, plaintiff's objections are overruled and Magistrate Judge Arlene R. Lindsay's R&R, as supplemented by this Memorandum and Order, is adopted in its entirety as the opinion of the Court. Defendants' motion for summary judgment is granted.

The Clerk of Court is directed to enter judgment accordingly and to close this case.

So Ordered.

Dated:   Brooklyn, New York

   November 10, 2025

/s/ Eric N. Vitaliano
_____
ERIC N. VITALIANO
United States District Judge